UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

NEPTUNE SHIPMANAGEMENT SERVICES (PTE.), LTD., ET AL. — CIVIL ACTION

v. — NO. 20-1525

VINOD KUMAR DAHIYA — SECTION "F"

ORDER AND REASONS

Before the Court is the plaintiffs' motion for summary judgment. For the following reasons, the motion is GRANTED.

**Background**

In this protracted litigation spanning multiple *decades*,[1] the plaintiffs[2] seek to confirm a much-awaited arbitration award. Despite the fact that that award represents a hard-fought (and sizable) monetary victory for the defendant Vinod Kumar Dahiya,

---

[1] The twists and turns of this personal injury litigation are well known by the parties and the Court. As such, in the interest of efficiency, the Court assumes familiarity with the background outlined in the orders and reasons previously issued in this case and its most recent companion (case number 20-1527).

[2] The plaintiffs in this case, which the Court has dubbed the "Vessel Interests," are Neptune Shipmanagement Services (PTE.), Ltd., Talmidge International Ltd., American Eagle Tankers, Inc., American Eagle Tankers Agencies, Inc., and Britannia Steam Ship Insurance Association Ltd.

Dahiya presses on in an increasingly quixotic bid to win greater damages in the United States.

The Court ends that effort today. As detailed below, the Vessel Interests are indeed entitled to summary judgment.

I.

The Vessel Interests seek summary judgment as to their entitlement to three related remedies: (1) a judicial confirmation of the Indian arbitrator's Award, (2) a permanent injunction barring Dahiya from any further attempts to relitigate the Award or prosecute other claims relating to the 1999 accident that underlies this litigation, and (3) a declaratory judgment that a Letter of Undertaking (LOU) issued by plaintiff Britannia Steam Ship Insurance Association Ltd. will be, upon the plaintiffs' satisfaction of the enforced Award, a legal nullity.

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if the record reveals no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A genuine dispute of fact exists only "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Supreme Court has emphasized that the mere assertion of a factual dispute does not defeat an otherwise properly supported motion. See id. As such, if evidence favoring the nonmoving party "is merely colorable, or is not significantly probative," summary judgment may be appropriate. Id. at 249-50 (citation omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of its case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the nonmoving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Expl. Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, it must come forward with competent evidence, such as affidavits or depositions, to buttress its competing claim. Id. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible at trial do not qualify as competent opposing evidence. FED. R. CIV. P. 56(c)(2); Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987) (per curiam). Finally, in evaluating a summary judgment motion, the Court must read the facts in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255.

II.

Applying the foregoing framework to the Vessel Interests' motion is relatively straightforward. As explained below, summary judgment is appropriate here because three plain legal conclusions flow directly from incontrovertible facts: first, that the Award is indeed subject to confirmation by this Court as a matter of federal law; second, that the Court's confirmation of the Award is binding on all parties to this litigation; and third, that the binding nature of that outcome precludes Dahiya's efforts to seek some other result.

These legal realities entitle the Vessel Interests to summary judgment on all issues presented by the motion. First, the Award can – and in fact must – be enforced by this Court. Second, the Court's enforcement of the Award settles this dispute as to all parties and claims, and as a result, merits permanent enjoinment of any attempts to disregard or upset that settlement. And third, the Court's final enforcement of the Award will render the LOU issued by Britannia a dead letter upon Dahiya's receipt of the Award.

The Court expounds on each of these findings in turn.

A.

The first issue raised by the Vessel Interests' motion is whether the Award falls under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, as adopted in Title 9 of the U.S. Code. If so, the Award is presumptively subject to the Court's confirmation as a matter of federal law. If not, the Vessel Interests' action is dead on arrival.

The Fifth Circuit has succinctly framed the issue on this threshold question as follows:

> The Convention applies when an arbitral award has been made in one state and recognition or enforcement is sought in another state. . . . [And an] award's enforcement is governed by the Convention, as implemented at 9 U.S.C. § 201 *et seq.*, if the award arises out of a commercial dispute and at least one party is not a United States citizen.

Asignacion v. Rickmers Genoa Schiffahrtsgesellschaft mbH & Cie KG, 783 F.3d 1010, 1015 (5th Cir. 2015).

As this Court has previously explained, in the complaint on which they now seek summary judgment,

> the Vessel Interests allege that an arbitral award has been issued in one signatory state (India) and seek enforcement of that award in another signatory state (the United States); and, they allege that that award arises from a commercial dispute and includes as a party at least one non-U.S. citizen (Dahiya).

Neptune Shipmanagement Servs. (PTE.), Ltd. v. Dahiya, 2020 WL 5545689, at *2 (E.D. La. Sept. 16, 2020) (footnote omitted). These

allegations are indisputably true.[3] Therefore, under 9 U.S.C. § 207, the Court "shall confirm" the Award, unless it "finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the . . . Convention."

The Fifth Circuit has supplied another tidy framework for this analysis. "Under the Convention, 'the country in which . . . an award was made' is said to have primary jurisdiction over the award. All other signatory states are secondary jurisdictions, in which parties can only contest whether the state should enforce the arbitral award." Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, 364 F.3d 274, 287 (5th Cir. 2004) (footnote omitted) (quoting Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, 335 F.3d 357, 364 (5th Cir. 2003)). Accordingly, the United States is indisputably a

---

[3] Five pertinent facts are beyond dispute on the record before the Court: (1) that the Award was issued in India, (2) that enforcement of the Award is being sought here, in the United States, (3) that India and the United States are signatories to the Convention, (4) that Dahiya is not a U.S. citizen, and (5) that the Award arises from an inherently "commercial" dispute between an employee and his employer. See Francisco v. STOLT ACHIEVEMENT MT, 293 F.3d 270, 274 (5th Cir. 2002) (observing that seamen employment contracts are "commercial" within the meaning of the Convention).

country of secondary jurisdiction with regard to the Award at issue.[4]

"[C]ourts in countries of secondary jurisdiction may refuse enforcement only on the grounds specified in Article V." Id. at 288; see also OJSC Ukrnafta v. Carpatsky Petroleum Corp., 957 F.3d 487, 497 (5th Cir. 2020) ("As a secondary jurisdiction, we can deny enforcement only on a ground listed in Article V. And we construe the Article V defenses 'narrowly [] "to encourage the recognition and enforcement of commercial arbitration agreements in international contracts."'" (alteration in original) (footnote omitted) (quoting Karaha II, 364 F.3d at 288)). No such grounds are present here.[5] Dahiya's repeated assertions – made at multiple stages of this litigation, including Dahiya's state-court motion to reinstate a defunct state-court judgment to the exclusion of the Award, as well as Dahiya's opposition to the present motion – as to the supposed invalidity of the agreement to arbitrate in

---

4 There is no question that India is the country in which the Award was made. See, e.g., Mot., Ex. A-1.

5 The Vessel Interests argue that the Court need not even reach this analysis. In their view, the Court need not consider the merits of any possible defenses to the Convention's application because Dahiya has waived such defenses by his failure to bring them in a timely fashion. While this may indeed be true, the Court declines to address that issue because all defenses Dahiya *has* urged are meritless in any event.

Dahiya's Deed are disorganized and unpersuasive. Federal district courts sitting in secondary jurisdiction under the Convention may not overturn international arbitration awards on flimsy and indefinite grounds. To the contrary, they are bound to observe the resounding public policy in favor of arbitration, as confirmed in countless federal cases and by the United States' adoption of the Convention itself. It is for this reason that federal district courts are required to review arbitration awards in an "extraordinarily narrow" fashion. See, e.g., Asignacion, 783 F.3d at 1015 ("A district court's review of an award is 'extraordinarily narrow.'" (quoting Kergosien v. Ocean Energy, Inc., 390 F.3d 346, 352 (5th Cir. 2004))); Karaha II, 364 F.3d at 306 (noting that Article V's catch-all public policy defense is "to be applied only where enforcement would violate the forum state's most basic notions of morality and justice" (quoting M & C Corp. v. Erwin Behr GmbH & Co., KG, 87 F.3d 844, 851 n.2 (6th Cir. 1996))).

Proceeding to the merits here, the Court sees no legitimate basis for overriding the Award in service of Dahiya's quest to achieve greater damages in yet further prosecution of this 20-year-old litigation. Ultimately, Dahiya is the *beneficiary* of an arbitration agreement that has already been deemed enforceable by

both an American court[6] and an Indian arbitrator, so his scattershot attempts to evade confirmation of an award under that very agreement ring particularly hollow.

Dahiya's principal ground for opposing the Vessel Interests' motion for summary judgment relates to the extension of the Award to nonparties to Dahiya's Deed (and the arbitration agreement therein). In Dahiya's view, the analysis on this point is quite simple: because none of the Vessel Interests but Neptune Shipmanagement Services (PTE.), Ltd. are party to Dahiya's Deed, none of the Vessel Interests but Neptune have standing to seek confirmation of the Award rendered under such Deed.

This contention is unavailing for two reasons. For one, it counteracts the Louisiana Fourth Circuit Court of Appeal's preclusive determination that Dahiya was required to arbitrate his claims against *all* of the Vessel Interests. Indeed, a close analogue of Dahiya's argument on this point was rejected by the Louisiana Fourth Circuit on multiple occasions. See Dahiya, 931 So. 2d at 1173 (holding that "the *defendants'* Exceptions of No Right of Action, Improper Venue and Arbitration should have been sustained and the case stayed pending arbitration" (emphasis

---

[6] See Dahiya v. Talmidge Int'l Ltd., 931 So. 2d 1163 (La. App. 4th Cir. 2006).

added)); Mot., Ex. E at 4-6 (similar arguments in application for rehearing that was subsequently denied). On remand after those rejections, the Louisiana District Court followed suit and stayed the case as to *all* defendants pending arbitration – in spite of Dahiya's argument that a stay should lie with respect to Neptune only. See Mot., Exs. G at 1, F at 10-12.

Perhaps more importantly though, the doctrine of equitable estoppel provides that an entity need not be a formal signatory to enforce an agreement to arbitrate in certain circumstances. In Grigson v. Creative Artists Agency L.L.C., the Fifth Circuit explicitly adopted the "intertwined-claims test formulated by the Eleventh Circuit" for use in situations just like this. 210 F.3d 524, 527 (5th Cir. 2000). That doctrine, now twenty years old in this circuit, provides that equitable estoppel

> is warranted when the signatory to a contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. Otherwise the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.

Id. (emphasis omitted) (quoting MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir. 1999)).

So too here. The Vessel Interests are obviously "interdependent" for purposes of this litigation, as all are

entities and insurers bearing some practical or legal connection to the injuries Dahiya suffered while aboard the M/T EAGLE AUSTIN in 1999. Consequently, because Dahiya's Deed obligates him to arbitrate his personal injury claims with respect to that incident against *one* Vessel Interest, Dahiya is equitably estopped from disclaiming the outcome and findings of that arbitration as against *the other* Vessel Interests.[7] The Fourth Circuit case of Aggarao v. MOL Ship Management Co. provides a direct parallel. 675 F.3d 355 (4th Cir. 2012). There, the court applied the equitable estoppel doctrine where a seaman's claims against signatory and nonsignatory entities alike arose from "the same 'occurrence' or 'incident,' i.e., the tragic circumstances on the Asian Spirit in August 2008 resulting in [the plaintiff's] injuries." See id. at 373-75. For the same reasons, Dahiya's assertion that the Award is binding solely as between him and Neptune is incorrect.

Accordingly, the indisputable facts before the Court allow just one conclusion on the central issue raised by the Vessel

[7] There is very good reason for this. Perhaps the most obvious is the avoidance of overlapping litigation and the corresponding possibility of conflicting results and/or double recoveries. Indeed, the claims and issues in an arbitration with some Vessel Interests, and a legal action with others, would obviously mirror each other in many key respects. In either dispute resolution forum, the tribunal would need to get to the bottom of what actually occurred, who is to blame, what is needed to make the plaintiff whole, and the like.

Interests' complaint and motion for summary judgment: The Award is legally binding as between Dahiya and each of the Vessel Interests, and the Court is compelled to confirm it as such under 9 U.S.C. § 207.

B.

The Court turns next to the scope and effect of its confirmation of the Award. In their motion, the Vessel Interests urge the Court to impose a permanent injunction to bar Dahiya from any further attempts to relitigate the Award or the underlying controversy. The Court agrees that a permanent injunction is warranted.

To obtain a permanent injunction, the Vessel Interests "must show: (1) success on the merits; (2) the failure to grant the injunction will result in irreparable injury; (3) the injury outweighs any damage that the injunction will cause the opposing party; and (4) the injunction will not disserve the public interest." United Motorcoach Ass'n v. City of Austin, 851 F.3d 489, 492-93 (5th Cir. 2017).

Each of those elements is met here.

1. Actual Success on the Merits

The Court's confirmation of the Award accords the Vessel Interests actual success on the merits in this action. Indeed,

confirmation and the corresponding finality it promotes are the principal remedies the Vessel Interests seek. For the reasons discussed in Section I.A, the Vessel Interests have prevailed on the merits of that claim.

Taken together, the successful arbitration of Dahiya's personal injury claim and this Court's confirmation of the Award Dahiya received in that arbitration have conclusively resolved Dahiya's legal entitlements with respect to the 1999 accident at issue. Indeed, where a plaintiff suffers an injury, is ordered to arbitrate his claims with respect to that injury, does in fact arbitrate those claims, and then has his arbitration award confirmed by a federal court of competent jurisdiction, his claim has in all senses been fully litigated and finally determined. Such is the case for Dahiya here.

2. Irreparable Injury

In a similar vein, the Vessel Interests will be irreparably harmed if they are forced to continue in never-ending litigation of Dahiya's futile attempts to resurrect a defunct state-court judgment and set aside a confirmed arbitration award.

3. Balance of the Equities

For similar reasons, the equities firmly favor the Vessel Interests' plea for an injunction. While the Vessel Interests are

asking to *pay* Dahiya the damages he was granted in arbitration, Dahiya is resisting that attempt to the collective detriment and expense of virtually everyone else.

The ultimate fact of the matter is that the Louisiana courts determined that Dahiya was legally obligated to arbitrate his claims against the Vessel Interests. Dahiya did so, in his home country, and received a substantial award. As such, there is no good reason for Dahiya to draw this decades-long litigation out any further. To the contrary, there *is* compelling good reason for the Vessel Interests to seek this injunction.

In the absence of an injunction, the Vessel Interests will be forced to engage in needless expenditures of time and money. In the issuance of an injunction, Dahiya will receive a substantial amount of money that – in the view of a good-faith arbitrator – makes him whole.

4. Public Interest

Because Dahiya's forlorn attempts to achieve a different outcome would also cost the courts and the taxpayers money, the public interest decisively favors an injunction as well. The public also has an interest in the observance and enforcement of valid arbitration agreements, as articulated by Congress. See, e.g., 9 U.S.C. § 2.

5. <u>The Anti-Injunction Act Does Not Preclude an Injunction</u>

The Anti-Injunction Act does not bar the Court from enjoining parallel state-court proceedings regarding Dahiya's 1999 injury. The Act explicitly provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court *except* . . . where necessary . . . to protect or effectuate its judgments." 28 U.S.C. § 2283. For this reason, "it is well settled among the circuit courts . . . which have reviewed the grant of an antisuit injunction that the federal courts have the power to enjoin persons subject to their jurisdiction from prosecuting foreign suits." <u>Kaepa, Inc. v. Achilles Corp.</u>, 76 F.3d 624, 626–27 (5th Cir. 1996) (also observing "the need to prevent vexatious or oppressive litigation"). Here, a failure to enjoin state-court proceedings initiated by Dahiya would do anything but "protect or effectuate" this Court's judgment – instead, it would do just the opposite, by allowing Dahiya to collaterally attack the Award and this Court's confirmation of it. A federal district court is well within its authority to enjoin vexatious parallel proceedings in such a situation.

C.

The Vessel Interests lastly request a declaratory judgment that the Letter of Undertaking issued by plaintiff Britannia Steam

Ship Insurance Association Ltd. must be canceled and returned to Britannia upon the Vessel Interests' satisfaction of the Award.

The Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, "offers the court an opportunity to afford a plaintiff equitable relief when legal relief is not yet available to him, so as to avoid inequities which might result from a delay in assessing the parties' legal obligations." Venator Grp. Specialty, Inc. v. Matthew/Muniot Family, LLC, 322 F.3d 835, 839-40 (5th Cir. 2003). While courts must take care to avoid issuing advisory opinions on issues that are not yet ripe for judicial resolution,[8] they nevertheless "must [] assess the likelihood that future [harmful] events will occur." Id. at 840.

In service of this equitable imperative, the Declaratory Judgment Act specifically authorizes federal courts to "declare the legal rights and other legal relations of any interested party seeking such relief" "[i]n a case of actual controversy within its jurisdiction." 28 U.S.C. § 2201. The jurisdictional predicate for this action is clear; the Vessel Interests' principal claim (for judicial confirmation of a foreign arbitration award) arises under federal law. See U.S. CONST. art. III, § 2; 28 U.S.C. § 1331.

---

[8] See, e.g., U.S. CONST. art. III, § 2 (confining the federal judicial power to cases and controversies).

Therefore, the Court has discretion to "declare the legal rights" of Britannia as it deems appropriate.

Here, the circumstances plainly warrant the relatively modest and straightforward declaration the Vessel Interests seek. While the possibility that Dahiya might refuse to honor this ruling and void the LOU on his own accord is exceedingly remote, declaring once and for all that Dahiya must indeed do so does not prejudice Dahiya and serves a substantial interest in bringing this decades-old litigation to an end.

* * *

The undisputed facts in this case paint a clear picture.

When the Louisiana state courts required Dahiya to honor his agreement to arbitrate his personal injury claims relating to a 1999 accident aboard the M/T EAGLE AUSTIN, Dahiya proceeded to arbitration. That arbitration yielded a substantial Award for Dahiya. When Dahiya laid renewed claim to a greater damages award which was initially granted but subsequently vacated in Louisiana state court, the Vessel Interests brought this federal action in an effort to confirm the Award Dahiya received in arbitration. The Court is required to confirm the Award as a matter of federal law, and because it has done so, the parties' legal relations with regard to the 1999 accident have been finally determined and fixed.

That reality merits the Court's enjoinment of all parallel actions relating to the 1999 accident, and counsels in favor of the Court's declaration of the parties' legal rights concerning the Letter of Undertaking plaintiff Britannia issued in relation to the same.

Accordingly, IT IS ORDERED:

1. That the plaintiffs' motion for summary judgment is GRANTED;

2. That the Arbitration Award dated January 25, 2020 and attached to the plaintiffs' complaint as Exhibit B is hereby CONFIRMED in accordance with 9 U.S.C. § 207;

3. That all pending or future legal actions arising from the personal injuries the defendant sustained while aboard the M/T EAGLE AUSTIN in 1999 are PERMANENTLY ENJOINED; and

4. That the Clerk of Court shall close Civil Action Number 20-1527 in light of this Order.

And, IT IS DECLARED:

1. That the Letter of Undertaking issued by plaintiff Britannia Steam Ship Insurance Association Ltd. shall be null and void upon the plaintiffs' satisfaction of the Arbitration Award.

New Orleans, Louisiana, October 14, 2020

Martin L. C. Feldman

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE